**Domingo Rellamas OROBIO,
Petitioner,**

v.

**John ASHCROFT, Attorney General of the United States, Respondent.**

**No. 02–2841.**

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit LAR 34.1(a) May 20, 2003.

Decided July 24, 2003.

Before: SCIRICA, Chief Judge, NYGAARD and BECKER, Circuit Judges.

## OPINION OF THE COURT

SCIRICA, Chief Judge.

Petitioner Domingo Rellamas Orobio, a native and citizen of the Philippines, en-

tered the United States in 1987 as a seaman in transit but overstayed his visa.[1] The Immigration and Naturalization Service ("INS") initiated deportation proceedings against him pursuant to former Immigration & Nationality Act § 241(a)(1)(B), 8 U.S.C. § 1251(a)(1)(B) on November 3, 1995. Orobio applied for asylum and withholding of deportation. In proceedings before the Immigration Judge ("IJ"), Orobio testified that members of the New People's Army ("NPA"), a Communist group, approached him and his father, a businessman, in Manila on two occasions and demanded that they pay a "revolutionary tax." They refused to pay. Orobio claimed that he left the Philippines when he found out that an NPA "hit squad" was looking for him.[2]

The IJ found Orobio deportable and denied his applications for asylum and withholding of deportation. In an order issued on June 3, 2002, the Board of Immigration Appeals ("BIA") upheld the IJ's decision. The BIA noted the IJ's findings of "internal inconsistencies in [Orobio's] testimony, and differences between affidavits [he] submitted to support his request for asylum and his testimony." (BIA Order, at 1.) It found that "[t]hese discrepancies bring [Orobio's] overall credibility into question[.]" *Id.* at 2. The BIA did not, however, base its decision solely, if at all, on this adverse credibility determination; it also concluded that Orobio failed to meet his burden of proving that he was persecuted or fears persecution "on account of" his political opinion. *Id.* at 2. Orobio has petitioned for review.

We will deny the petition for review. Pursuant to section 208(a) of the Immigra-

---

1. Inasmuch as we are writing only for the parties, we need not set forth the factual and procedural background of this matter, except as may be helpful to our brief discussion.

2. Orobio's wife and children still live in the Philippines and have not been harmed or threatened.

tion and Nationality Act, 8 U.S.C. § 1158(a) (West 1999), the Attorney General may, in his discretion, grant asylum to individuals who are "refugees" within the meaning of 8 U.S.C. § 1101(a)(42)(A). A "refugee" includes any person who is unable or unwilling to return to his home country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. *Id.; Abdille v. Ashcroft,* 242 F.3d 477, 482 (3d Cir.2001). To be entitled to withholding of removal to a particular country, an applicant must prove that his "life or freedom would be threatened in that country because of [his] race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3).

Under *Immigration & Naturalization Serv. v. Elias–Zacarias,* 502 U.S. 478, 483, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992), we can reverse the BIA's finding that Orobio did not establish a well-founded fear of present or future persecution only if the evidence compels a reversal. In addition to providing the proper standard of review for this petition for review, *Elias–Zacarias* also sets forth the basic asylum eligibility principles when an alien attempts to show that he was persecuted on account of his political opinion. 502 U.S. at 483. To prevail on his claim for asylum, Orobio had to show not only that he held an opinion in opposition to the views of the NPA, but also that the NPA persecuted him *because* of his political opposition. *Id.*

█ Orobio testified that he opposed the NPA and that he refused to pay the "revolutionary tax" because he was "against them because they are against the government and the religion[.]" A.R. 135. However, Orobio's testimony does not show that the NPA knew that his refusal to pay the tax was politically-based. Orobio admitted that he was never involved in political activities. Absent evidence that the NPA knew that his refusal to pay was politically-based, Orobio cannot show that the NPA persecuted or will persecute him because of his political opinion, rather than simply because of his refusal to pay the tax. *Elias–Zacarias,* 502 U.S. at 483 (alien "must provide *some* evidence of [his persecutors' motive], direct or circumstantial") (emphasis in original).

Orobio has argued that it was obvious to the NPA that his refusal to pay was based on his disagreement with their politics, but this argument was rejected by the Supreme Court in *Elias–Zacarias,* and must be rejected here. In *Elias–Zacarias,* a guerilla group asked the alien to join with them, but the alien refused. The guerillas could reasonably have believed that the alien's refusal to join them was politically-based, just as the NPA could reasonably have believed that Orobio's refusal to pay the tax was politically-based. However, the mere fact of the alien's refusal was insufficient in *Elias–Zacarias* to show that the guerillas believed the refusal was motivated by the alien's political opinion rather than by, say, his "fear of combat, a desire to remain with [his] family and friends, a desire to earn a better living in civilian life[.]" *See id.* at 482 ("Nor is there any indication … that the guerillas … *believed* that Elias–Zacarias' refusal was politically based.") (emphasis in original).

Here, similarly, without knowledge that Orobio's refusal to pay the tax was politically-based, the NPA could have believed that his refusal was based simply on his disinclination to pay taxes, a disinclination no doubt shared by many, including those who are in favor of the NPA or apolitical. The fact that the NPA could reasonably have believed that Orobio refused to pay the tax because he disagreed with their politics is not enough to show that it harbored such a belief for purposes of estab-

**116**

lishing that it persecuted or will persecute him because of his political opinion. Here, as in *Elias–Zacarias*, there was no evidence that the NPA in fact believed that Orobio's refusal to pay the "revolutionary tax" was on account of political opinion. *See also Lukwago v. Ashcroft*, 329 F.3d 157, 181 (3d Cir.2003) (certain deliberate acts by alien will establish well-founded fear of persecution on account of imputed political opinion only if persecutor attributes political beliefs to alien as result of these acts).

In *Borja v. Immigration & Naturalization Serv.*, 175 F.3d 732 (9th Cir.1999) (en banc), the Ninth Circuit held that the NPA's extortion of the pro-government alien was not purely economic and would provide a basis for asylum. *Id.* at 736. *Borja*, however, recognizes that NPA extortion of business people can be purely economic in nature, depending on the particular circumstances. In *Borja*, the alien had refused to enlist in the NPA, which made the NPA agents angry. On a subsequent extortion "visit," they slashed her with a knife. *Id.* at 734–35. The Ninth Circuit explained:

> In contrast to the record in *Elias–Zacarias*, which did not contain any clear evidence of the guerillas' motive, either direct or circumstantial, Ms. Borja articulated her political opposition to the NPA as the reason for her refusal to join. We know that the NPA agents acted in direct response to her statement of political opposition and revulsion at their methods because their immediate reaction was to "get mad" and point a gun at her.

*Id.* at 736. Here, in contrast, the record shows no clear evidence of the guerillas' motive, either direct or circumstantial. ▌ Orobio's testimony that an NPA "hit squad" was looking for him presents a closer question, but again, even assuming

the credibility of that assertion, the record shows no clear evidence of the NPA's motive for placing him on a "hit list." Orobio did not, for example, find himself on such a list only after he both refused to pay the tax *and* acted as an effective informant, as the alien did in *Mejia v. Ashcroft*, 298 F.3d 873, 877–78 (9th Cir.2003) (alien's refusal to pay NPA revolutionary tax together with his successful actions as confidential informer for Philippine military rendered him prima facie eligible for asylum). We thus find no basis for disagreement with the BIA.

We will deny the petition for review.