

Opinions of the United
States Court of Appeals
for the Third Circuit

10-26-2004

# Rana v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-4076

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation
"Rana v. Atty Gen USA" (2004). *2004 Decisions.* Paper 197.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/197

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 03-4076
_____

JAIBAHADUR B. RANA
                    Petitioner,

v.

JOHN ASHCROFT, ATTORNEY GENERAL OF THE UNITED STATES
                    Respondent.

_____

On Petition for Review of an Order of Removal
from the Board of Immigration Appeals
U.S. Department of Justice
Executive Office for Immigration Review
(BIA No. A75-612-212)

_____

Argued: Tuesday, September 28, 2004

_____

Before: ROTH, BARRY, and GARTH, Circuit Judges

(Opinion Filed: October 26, 2004)
_____

OPINION
_____

Garth, <u>Circuit</u> <u>Judge</u>:

Jaibahadur Bahadur Rana, a citizen of Nepal, petitions for review of a decision by the Board of Immigration Appeals ("BIA") denying his application for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). In so ruling, the BIA affirmed without opinion the finding of the Immigration Judge ("IJ") that Rana lacked credibility because of inconsistencies between his oral testimony and asylum application. We have jurisdiction under 8 U.S.C. § 1252. We will deny the Petition for Review.

## I.

Because we write exclusively for the benefit of the parties who are well acquainted with the facts and procedural posture of the present action, we will recount only those matters relevant to the issues before us. Rana entered the United States on June 15, 1998 pursuant to a temporary visa, which authorized him to remain in this country until December 14, 1998. On or about October 26, 1998, Rana filed an application for asylum. On December 22, 1998, the INS filed a Notice to Appear, charging Rana with overstaying his visa and with removability under Section 237(a)(1)(B) of the INA, 8 U.S.C. § 1227(a)(1)(B). Rana conceded removability, but requested asylum, withholding of removal, and protection under the CAT.

Rana was the sole witness at his asylum hearing, during which he recounted the following narrative of his experiences. Rana is a 48 year-old citizen and native of Nepal.

He was employed for 24 years by the British Army, retiring sometime in 1996. Rana has a wife and two sons, who, at the time of the hearing, were 12 and 14 years of age.

Rana bases his persecution claim on two altercations with members of the MAO communist party (the "Maoists"). The first incident occurred on January 5, 1998, when twenty to thirty Maoists came to his house. At the time, Rana was home with his wife, one son, and a young servant girl. At first, the Maoists merely informed Rana about the nature and purpose of their movement, stating that inasmuch as there should be no poverty among the people, it was necessary to confiscate the wealth and property of the rich. In response, Rana told the Maoists that he disliked the principles they were espousing, preferring instead democracy and the current political climate. To this the Maoists reacted with anger, using rough vocabulary and issuing threats, and stating in particular, "either you join us or you don't, then they started asking [for] money." Rana, however, refused to give the Maoists money. The Maoists then informed Rana that such refusal would endanger the life of one of his family members. Before leaving, moreover, one or more of the Maoists struck Rana, causing him to sustain facial cuts.

Rana sought medical treatment for his injuries, and at the asylum hearing he submitted a doctor's report confirming his visit and describing his injuries. Rana did not report the incident to the police because the Maoists threatened him with serious danger should he do so.

Rana further testified that the Maoists returned a second time on February 26,

1998, when another group, also numbering between twenty and thirty, came to his house during the middle of the night. The Maoists demanded money and once more requested that Rana join their ranks. The Maoists again threatened both Rana and his wife, including a threat to rape his wife. Rana reacted by kicking one of the Maoists, and he was then beaten unconscious by several members of the group. He awoke in the hospital, and although his wife was not physically injured during this encounter, she suffered shock. This time Rana's wife reported the incident to the police, but the police said that they could not protect an individual person in light of the many victims of the Maoists' terrorizing activities. Rana submitted both the hospital and police reports relating to this second incident at the asylum hearing.

Although Rana experienced no other violent encounters with the Maoists, in March 1998 he received a message "through other people," *i.e.*, someone delivered a "leaflet with the demand that I have to pay them." Rana testified that "[t]heir aim was to extract the money, to get the money" by threatening people and their families.

Fearing for his safety, Rana left Nepal in June of 1998. His wife and children remained in Nepal. Rana has stated that, if he were to return to Nepal, the Maoists would torture and kill him because he is against them.

In an oral decision, the IJ determined that, based on his oral testimony, Rana qualified for asylum under the theory of imputed political opinion. However, the IJ concluded that Rana was not credible, and he thus denied Rana's asylum application. The

IJ stated that there was a serious contradiction between Rana's testimony and his asylum application. In particular, the IJ noted that Rana's asylum declaration said nothing about the Maoists seeking him to join their movement. Upon reciting Rana's testimony–and its emphasis on the Maoists' political objectives and alleged desire to recruit him–the IJ observed:

> [I]t is only incidental in his testimony today that they asked him for money. Well that is very different from his asylum application, because his asylum application has nothing to do with them seeking to [have him] join their movement. That's never mentioned; never any threats because he wouldn't join the movement. It is very clear from his declaration that this was all about money, weapons, and assets that would be supplied by him for their cause.

The IJ thus concluded that Rana had "created a recent fabrication in order to qualify for asylum by articulating for the first time, a theory other than money and assets for this organization."

Driven by Rana's lack of credibility, the IJ searched for any corroborating evidence that might independently support Rana's claims. But the few documents submitted by Rana said nothing about the critical issue, *i.e.,* the Maoists' alleged political motives. The IJ stated that the various hospital and police reports did not answer that question because they were silent as to why the Maoists harmed Rana. A letter from Rana's son also failed to indicate the cause of the threats and beatings, even though the son was allegedly present during the January 5, 1998 encounter. The IJ placed further emphasis on the fact that the wife failed to provide corroborative evidence despite being an eyewitness to both events.

The BIA affirmed the IJ's decision without opinion.  Rana timely filed this Petition

for Review, limiting his arguments to his asylum claim,[1] thereby abandoning his claims

for withholding of removal and protection under the CAT.  *See F.D.I.C. v. Deglau*, 207

F.3d 153, 169 (3d Cir. 2000) (finding challenge waived if not in opening brief).

## II.

Where, as here, the BIA affirms the IJ's decision without opinion, the opinion of

the IJ constitutes the final agency determination for purposes of our review. 8 C.F.R.

§ 1003.1(e)(4) (2003); *Dia v. Ashcroft*, 353 F.3d 228, 243 (3d Cir. 2003) (en banc).  We

review adverse credibility determinations for substantial evidence.  *Balasubramanrim v.*

*INS*, 143 F.3d 157, 161 (3d Cir. 1998).   Under this deferential standard of review, we

must uphold the credibility determination of the BIA or IJ unless "any reasonable

adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

For Rana to prevail, then, the evidence of credibility must be so strong in his favor

that in a civil trial he would be entitled to judgment on the credibility issue as a matter of

law.  *See INS v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992) (holding that BIA's

decision can be reversed only where petitioner's evidence "compels" a reasonable

factfinder to find in his favor).  That said, adverse credibility determinations "based on

---

[1]Aside from claiming persecution based on his political opinion, Rana argues that he had established asylum based on his membership in a particular social group.  We will not consider this issue because Rana failed to raise it in his Notice of Appeal or in his brief to the BIA.  It is well settled that this court may not consider particular questions not raised in an appeal to the BIA. *Miah v. Ashcroft*, 346 F.3d 434, 439 n.2 (3d Cir. 2003) (citing *Alleyne v. INS*, 879 F.2d 1177, 1182 (3d Cir. 1989)).

speculation or conjecture, rather than on evidence in the record, are reversible." *Dia*, 353 F.3d at 249 (quoting *Gao v. Ashcroft*, 299 F.3d 266, 272 (3d Cir. 2002)). Minor inconsistencies in the record are not an adequate basis for an adverse credibility finding. *Senathirajah v. INS*, 157 F.3d 210, 221 (3d Cir. 1998). The IJ must instead base such a finding on discrepancies that "involve the heart of the asylum claim." *Gao*, 299 F.3d at 272.

In finding Rana to be not credible, the IJ's determination was based primarily on the "serious contradiction" between his asylum declaration and oral testimony. We conclude, after reviewing the record as a whole, that the record evidence does not compel a contrary conclusion to that of the IJ.

It is evident that Rana's asylum declaration said nothing about the Maoists asking him to join their movement, though, even if it did, the mere fact of his refusal would not, without more, support a finding that Rana had been persecuted on account of his political opinion. *See Elias-Zacarias*, 502 U.S. at 482 (alien's refusal to join guerilla group insufficient to show persecution on account of political opinion, as guerillas could have believed that such refusal was motivated by other factors). What carries particular import about the declaration, then, is its conspicuous silence with respect to the crux of Rana's asylum claim, to wit, that the prime motivating factor in the two violent attacks was his professed disdain of the Maoists' political objectives and his allegiance to the democratic government. This silence is rendered more problematic by the declaration's repeated

references to the Maoists' economic or financial motivations, as well as the statement that Rana "had always been a person of no political background and living in peace."

On the declaration alone, therefore, Rana cannot show that the Maoists persecuted or will persecute him because of his political opinion, rather than simply because of his refusal to pay the demand for money. The latter reason is not enough to support a finding of persecution. *See Orobio v. Ashcroft*, 71 Fed.Appx. 113, 115-16 (3d Cir. 2003) (holding that alien failed to show that he was subject to persecution on account of political opinion on basis that communist group demanded tax from him that he refused to pay); *Borja v. Immigration & Naturalization Serv.*, 175 F.3d 732, 736-37 (9th Cir. 1999) (en banc) (recognizing that extortion of business people can be purely economic in nature, though holding that extortion of pro-government alien was not purely economic).

Rana's testimony, in contrast, stressed the political motivations of the Maoists. Rana testified that the Maoists "asked me to join their movement. They said, come, join our movement." He further testified that he told the Maoists that he disagreed with their political principles, which prompted the first of two violent attacks. This stands in sharp contrast to his declaration, which reported only that he was "severely beaten" and which made no reference to any political conversations with the Maoists.

Despite these discrepancies, Rana contends that no contradictions exist between the declaration and the oral testimony. He argues that the oral testimony merely filled in missing details in the declaration, thus elaborating upon, not contradicting, his asylum

application. We must reject this argument because the discrepancies relied upon by the IJ cannot be equated with the "minor inconsistencies" that are unrelated to the heart of Rana's asylum case. *Compare Gao*, 299 F.3d at 273 (finding minor inconsistency between alien's application and oral testimony where application stated that alien was "messenger" for Falungong and oral testimony included statement that alien was "practicing Falungong," in addition to being "messenger"); *Senathirajah*, 157 F.3d at 221 (finding minor inconsistency where alien's written statement contained time frames not identical to those testified to).

Indeed, the core issue in this case is whether the Maoists persecuted Rana because of his refusal to fund their political activities or rather because he professed political opinions contrary to their own. That the asylum application fails to even mention the critical facts said to support the important political nexus upon which this case revolves is enough to sustain the IJ's adverse credibility determination.

In addition, Rana's explanation for the discrepancies among his testimony and asylum application is unconvincing. He contends that his asylum application contained only a "concise statement, which was nice and sweet," of what he recalled at the time. As the IJ noted, however, Rana was an instructor for 24 years in the British military, trained to take cognizance of details. It seems unlikely that Rana would forget the reason why he was physically assaulted on two occasions by the Maoists. Nor does it appear likely that Rana's professed attempt at brevity constrained him from including a statement about the

Maoists' political motivations, especially where he found the opportunity to repeatedly mention the Maoists' demands for money. As such, the IJ was not unreasonable in rejecting Rana's response to the inconsistencies.

Lastly, the IJ's adverse credibility determination was not based on the discrepancies alone but rather took into account the absence of corroborative evidence concerning the alleged political motives of the Maoists. *See Gao*, 299 F.3d at 272 (explaining that "the INS may require documentary evidence to support a claim, even from otherwise credible applicants, to meet their burden of proof"). Neither his wife nor son, who were both present at the first altercation in which Rana allegedly expressed his political views in opposition to the Maoists' entreaties, supplied an affidavit corroborating those facts. Rana offered no reasonable explanation to the IJ, or to this court, why he failed to produce such easily ascertainable corroborative evidence.

**III.**

The discrepancies between the asylum declaration and the oral testimony concerning the motives of the Maoists are not minor or inconsequential, as they involve the heart of Rana's asylum claim based on political persecution. In addition, the IJ's adverse credibility determination is further supported by the absence of corroborative evidence to critical aspects of Rana's claim. Inasmuch as the IJ's decision was supported by substantial evidence in the record, we must uphold the IJ's adverse credibility determination.

We will deny the Petition for Review.[2]

---

[2] Rana also argues that the BIA failed to comply with its own regulations when it issued a summary affirmance in this case. We are bound by our recent decision in *Dia v. Ashcroft*, 353 F.3d 228 (3d Cir.2003) (en banc), which upheld the constitutionality of the BIA's summary affirmance procedure. Rana argues, though, that it was error to apply that procedure in this case, apart from its constitutional dimensions. Framing the argument in this manner does not elevate it above the clear strictures of *Dia.* Because we directly review the decision of the IJ when a case comes to us from the BIA under the streamlining regulations, the decision to streamline becomes indistinguishable from the merits. That is to say, the substance of our review is the same whether the BIA properly or improperly streamlined a particular case. *See Falcon Carriche v. Ashcroft*, 350 F.3d 845, 855 (9th Cir. 2003) ("Were we to find an error, we would either grant relief if permitted or simply remand to the BIA to proceed in a manner consistent with our decision.").